UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EDDIE ROBINSON,

                                                    Plaintiff,

            vs.                                                   9:05-CV-1428
                                                                     (GLS/ATB)
SUSAN CONNELL, *et al.*,

                                                    Defendants.

_____

EDDIE ROBINSON, Plaintiff *Pro Se*
TIMOTHY P. MULVEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

        This matter was referred by United States District Judge Gary L. Sharpe, for

Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules

N.D.N.Y. 72.3(c).

        In this amended civil rights complaint, plaintiff alleges that defendants

miscalculated his sentence, causing him to be detained long past his maximum

expiration date. (Dkt. No. 11).  Plaintiff seeks substantial monetary relief for the time

that he was allegedly illegally detained.  Plaintiff and defendants have cross-moved

for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 47, 49).  Plaintiff has

filed a response in opposition to defendants' motion. (Dkt. No. 52).  For the following

reasons, this court finds that even assuming that plaintiff's claim is properly before the

court, his sentence was calculated correctly, and his complaint may be dismissed in its

entirety.

## DISCUSSION

### I.   <u>Procedural History</u>

The court will outline a brief procedural history of this action for clarity.  On September 18, 2003, plaintiff filed a petition for writ of habeas corpus, challenging the erroneous calculation of his sentence and requesting release from confinement. *See Robinson v. Connell*, No. 9:03-CV-1151 (LEK/VEB[1]).  On November 15, 2005, plaintiff filed this action seeking substantial monetary relief under section 1983 for the allegedly "unauthorized detention," resulting from same erroneous calculation. (Dkt. No. 1 at 18-19).  Although plaintiff was allowed two attempts to amend the complaint in this case, (Dkt. Nos. 8, 11), on June 6, 2006, Judge Sharpe dismissed the action *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and Rule 5.4(a) of the Local Rules of the Northern District of New York. (Dkt. Nos. 9, 12).

Judge Sharpe based his orders substantially[2] on *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which holds that plaintiff may not bring an action under section 1983, challenging the propriety of his ongoing detention, unless plaintiff can also prove that the sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. (Dkt. No.

---

[1] The petition for habeas corpus relief was originally assigned to Magistrate Judge Treece, but on May 5, 2007, the case was reassigned to Magistrate Judge Victor Bianchini for Report-Recommendation. (Dkt. No. 45 in 9:03-CV-1151).

[2] Judge Sharpe also mentioned that plaintiff brought some other claims for which he alleged no personal involvement by the named defendants. (Dkt. No. 9 at 2).  Although Judge Sharpe gave plaintiff the opportunity to amend the complaint again, plaintiff failed to correct the deficiencies in the complaint. (Dkt. No. 12 at 2).  None of these "other" claims of wrongdoing currently remain in this action.

2

9 at 2; Dkt. No. 12 at 1).  At the time of Judge Sharpe's orders, plaintiff's petition for habeas corpus, 9:03-CV-1151, was still pending, and his second amended complaint in this action "set forth . . . allegations and claims relating solely to his contention that his sentence has been improperly calculated and that he is being illegally detained." (Dkt. No. 12 at 2).  Because the habeas petition had not been resolved, and plaintiff's sentence calculation had not been invalidated, Judge Sharpe held, based on *Heck v. Humphrey*, that plaintiff's second amended complaint in this action failed to state a claim upon which relief could be granted and dismissed the action. *Id.*  Judgment was entered for defendants. (Dkt. No. 13).

Plaintiff was conditionally released from confinement on December 4, 2006. (Dkt. No. 48 in 9:03-CV-1151) (Bianchini, M.J.) (Report-Recommendation).  On September 28, 2007, Magistrate Judge Bianchini recommended dismissing plaintiff's habeas corpus petition as moot, based on the lack of collateral consequences resulting from the alleged miscalculation of his sentence, and therefore, the lack of an ongoing "case or controversy."[3] *Id.* at 2-4.  The Honorable Lawrence E. Kahn approved and adopted the Report-Recommendation on March 31, 2008, dismissing the petition for habeas corpus. (Dkt. Nos. 49, 50 in 9:03-CV-1151).

On February 28, 2008, plaintiff moved to vacate the judgment in this action pursuant to Fed. R. Civ. P. 60(b). (Dkt. No. 14).  At the same time, plaintiff moved to

---

[3] Although plaintiff was conditionally released on December 4, 2006, he violated parole again. It is unclear, however, that he went back to prison after this violation.  He was discharged from parole on July 21, 2007.

consolidate this action with his application for habeas corpus relief.[4] *Id.*  The basis of plaintiff's motion to vacate was "newly discovered evidence" that his sentence had been miscalculated. *Id.*  The newly discovered evidence consisted of plaintiff's allegedly successful "motion to vacate" his criminal sentence before New York State Supreme Court Justice Deborah Dowling. *Id.*

On March 20, 2008, Judge Sharpe denied plaintiff's motion because, under Rule 60(c)(1), a motion to vacate pursuant to Rule 60(b)(1)-(3) must be made no more than one year after the entry of judgment, and plaintiff had failed to meet the one year deadline. (Dkt. No. 17 at 4).  Judge Sharpe also stated that plaintiff's "new evidence" did not show that plaintiff's sentence had been reversed in any of the required ways under *Heck*. *Id.*  Thus, Judge Sharpe denied the motion to vacate the judgment and plaintiff's request to consolidate 9:03-CV-1151 with 9:05-CV-1428. *Id.* at 4-5.

Plaintiff appealed Judge Sharpe's order to the Second Circuit. (Dkt. No. 18). On September 21, 2009, the Second Circuit vacated Judge Sharpe's order denying plaintiff relief under Rule 60(b) and remanded the case to the District Court for consideration of whether *Heck v. Humphrey* still applied to bar the plaintiff's claims in view of his release from confinement and the Second Circuit's decision in *Huang v. Johnson*, 251 F.3d 65, 73-75 (2d Cir. 2001).  In *Huang*, the Second Circuit held that section 1983 is the remedy that a former prisoner may use after his release from confinement if he claims that his release date was improperly calculated. *Id.*  The

---

[4] This was plaintiff's second attempt at moving to consolidate this action with his habeas corpus petition. (*See* Dkt. No. 4; Letter-Motion to Consolidate).  Plaintiff's motion to vacate/consolidate was filed after Magistrate Judge Bianchini's recommendation to dismiss the habeas petition, but before Judge Kahn's final order dismissing that action.

Second Circuit also held that the District Court should consider whether to construe plaintiff's Rule 60(b) motion as arising under Rule 60(b)(5) or 60(b)(6), which would not be subject to the one-year time limitation. *Id.*

On February 9, 2010, Judge Sharpe issued an order based on the Second Circuit mandate. (Dkt. No. 29). After reviewing the procedural history of this action, Judge Sharpe construed plaintiff's Rule 60(b) motion as arising under Rule 60(b)(5) and (6). *Id.* at 4. Based upon this construction, Judge Sharpe granted plaintiff's motion to vacate his earlier judgment and reopened "this matter **for the sole purpose of addressing plaintiff's claim that his release date was erroneously calculated resulting in a period of unlawful detention.**" *Id.* at 4-5 (citing *Huang v. Johnson*, 251 F.3d at 73-75).

On May 12, 2010, plaintiff moved for summary judgment. (Dkt. No. 47). Defendants cross-moved for summary judgment on May 20, 2010. (Dkt. No. 49). Plaintiff filed his response to defendants' motion on May 28, 2010. For the following reasons, this court recommends that plaintiff's motion be denied, that defendants' cross-motion be granted, and that the complaint be dismissed in its entirety.

## II.   <u>Facts and Contentions</u>

Defendants have filed a various exhibits in support of their summary judgment motion, outlining the plaintiff's incarceration/release history. (Dkt. Nos. 49, 50). Defendants have included as Exhibit A, the affirmation of Richard de Simone, Esq., Associate Counsel, Office of Sentencing Review for DOCS. (Dkt. No. 49-2; Defs.' Ex. A). Plaintiff's relevant incarceration history began when he was sentenced by the Supreme Court, Kings County on January 4, 1991 to a concurrent terms of 1 to three

years confinement for Criminal Possession of Stolen Property, Third Degree and Grand Larceny, Third Degree. (Defs.' Ex. A; Dkt. No. 49-2 at 2; de Simone Aff.).  On January 17, 1991, plaintiff was received by the New York State Department of Correctional Services (DOCS). *Id.*  When he entered DOCS, he was given a total of 359 days of jail-time credit. *Id.*

On May 1, 1991, plaintiff was sentenced by the Supreme Court in New York County to an additional concurrent term of imprisonment of 2 to 4 years for Criminal Possession of Stolen Property, Third Degree. *Id.*  Plaintiff was released to parole supervision on February 7, 1992, but was declared delinquent on June 9, 1992. *Id.*  On December 17, 1992, plaintiff was sentenced in Supreme Court, New York County to a term of 3 ½ to 7 years imprisonment for Grand Larceny, Second Degree, to run consecutively to plaintiff's prior sentences by operation of N.Y. PENAL LAW § 70.25 (2-a). *Id.* at 3.  Plaintiff was returned to DOCS on January 7, 1993 and received 213 days of jail-time credit on his sentence. *Id.*  On April 4, 1995, plaintiff failed to return to Edgecombe Correctional Facility from a work release program, but was returned to DOCS several days later on April 18, 1995. *Id.*

Plaintiff was released on parole for the second time on April 22, 1997, but was declared delinquent less than on month later on May 8, 1997. *Id.*  On October 10, 1997, plaintiff was restored to parole supervision and was credited with 129 days of jail time. *Id.*  On January 4, 1999, plaintiff was declared delinquent and was returned to DOCS on June 21, 1999, credited with 145 days of jail time. *Id.*  Plaintiff was paroled again on September 16, 1999, but was declared delinquent on November 16, 1999. *Id.*  On February 3, 2000, plaintiff was returned to DOCS as a parole violator

and credited with 76 days of jail time. *Id.*  On April 28, 2000, plaintiff was sentenced in Supreme Court Kings County to a term of 3 to 6 years for Grand Larceny, Second Degree.  The court imposed the sentence to run concurrently to the "sentence currently serving." *Id.*

Plaintiff was paroled again on July 5, 2000, but was declared delinquent the next day. *Id*.  On July 28, 2000, plaintiff was returned to DOCS as a parole violator and was credited with 22 days of jail time. *Id.* at 4.  He was paroled again on October 19, 2000, but was declared delinquent on November 15, 2000. *Id.*  On January 3, 2001, plaintiff was returned to DOCS as a parole violator and credited with 49 days of jail time. *Id.*  On May 9, 2002, plaintiff was sentenced by the Supreme Court, Kings County to a term of 1½ to 3 years for Criminal Possession of a Controlled Substance, Fourth Degree. *Id.*  Plaintiff was received by DOCS on May 29, 2002, with 272 days jail-time credit. *Id.*

On April 4, 2005, an amended commitment was issued for the 2000 sentence (case no. 9130-99).  The new commitment stated that the "Judge recommends that this sentence runs concurrently with time owed to parole, non [sic] pro tunc to 4/4/00, the date of sentence." *Id.*  On September 22, 2006, another amended commitment was issued for the 2000 sentence.  This amendment stated that the sentence was to run "concurrently with the sentences imposed on New York County case no. 3091-01 and 'any other time owed to parole.'" *Id.*  The new commitment also stated that "this sentence shall run concurrently with all outstanding sentences." *Id.*

Plaintiff was conditionally released on December 4, 2006 and declared delinquent on April 4, 2007. *Id.* at 5.  A release violation warrant was issued by the

Division of Parole on May 13, 2007, and a final revocation hearing was held by the Division of Parole on July 9, 2007, after which plaintiff received a four month time assessment. *Id.*  On July 21, 2007, plaintiff was discharged by the Division of Parole upon the maximum expiration of his sentence. *Id.*

Plaintiff believes that, as of February 3, 2000, all his prior criminal convictions "had a max out date of 3/12/01 . . . ." (Pl.'s Reply, "Statement of Material Facts"; Dkt. No. 52 at 9).  Plaintiff states that his 3 to 6 sentence from 2000 (Indictment # 9130-99) was made to run "concurrent with IND # 5681-92 with time left on parole . . . ." *Id.* Plaintiff seems to claim that, because his 2000 sentence was made to run concurrent to his 1992 sentence, both sentences were completed prior to his 2001 conviction for which he was sentenced to 1 to 3 years.  Plaintiff claims that Ind. # 3091-01 had a conditional release date of April 12, 2003 and a "max date of 4/12/04," making illegal his detention beyond April of 2004.

### III.   **Summary Judgment - Legal Standards**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272. "[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (citing, *inter alia*, *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest")). "However, a pro se party's "bald assertion," completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)). While a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous review of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

## IV.   **Sentence Calculation**

### A.    **Effect of *Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001)**

The issue in this case is very narrow.  Judge Sharpe reopened this action for the sole purpose of "addressing plaintiff's claim that his release date was erroneously calculated."[5] (Dkt. No. 29 at 5).  Judge Sharpe cited *Huang v. Johnson*. *Id.*  In *Huang*, the Second Circuit held that *Heck v. Humphrey* did not apply to bar plaintiff's civil rights action, and "a former prisoner, no longer 'in custody' may bring a § 1983 action . . . without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Huang*, 251 F.3d at 74.

Courts have held, however, that *Huang* does not apply when the plaintiff was still incarcerated at the time that he filed his section 1983 claim. *See Rolle v. Connell*, No. 9:05-CV-991, 2005 WL 3077474, *2-3 (N.D.N.Y. Nov. 16, 2005); *Gastelu v. Breslin*, No. 03-CV-1339, *4 (E.D.N.Y.  Sept. 12, 2005).  In *Rolle*, Chief Judge Mordue specifically held that *Huang* did not apply when the plaintiff was not released

---

[5] Plaintiff named several defendants in this case.  Defendant Susan Connell is the Superintendent of Oneida Correctional Facility, where plaintiff was incarcerated; defendant David Debejian was the civilian director of the Grievance Program at Oneida; defendant Frank Marlenga was a parole officer at Oneida; defendant Mrs. Dignean was a counselor at Oneida; defendant Mrs. Muncy was the records coordinator at Oneida; and defendant Mr. Hulihan was the Deputy Superintendent of Programs at Oneida.  Plaintiff made a variety of claims in his original complaint.  Some allegations were related to grievance procedures and other issues that plaintiff had with these defendants.  However, Judge Sharpe has reopened this case for the sole purpose of addressing plaintiff's sentence calculation claim.  Thus, any other defendants were eliminated from this action by Judge Sharpe's order.  In addition, although not necessary to this recommendation, this court notes that these individuals had no personal involvement in the calculation of plaintiff's sentence. *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (personal involvement is a prerequisite to the assessment of damages in a section 1983 case); *Odom v. New York State Dept. of Correctional Services*, 122 F.3d 1057 (table), 1995 WL 595550, at *2 (2d Cir. 1995) (upholding dismissal of Section 1983 claims based, in part, on the conclusory nature of allegations regarding the personal involvement of certain defendants).

"until *after* he filed his suit." 2005 WL 3077474 at *3 (citing *Gastelu, supra*; *Bowdy v. Karpe*, No. 3:00-CV-1855, 2004 WL 2203464, *7 (D. Conn. Sept. 20, 2004)).

In this case, plaintiff was still incarcerated when he filed this section 1983 action, and thus, pursuant to District Court cases such as *Rolle*, *Gastelu*, and *Bowdy*, *Heck* would still apply to bar the plaintiff's action because a decision in plaintiff's favor would certainly affect the validity of his former confinement.  However, this court notes that the Second Circuit has not confirmed these district courts' interpretation of *Huang*, and thus, this court will not recommend dismissal based on *Heck v. Humphrey*, but will analyze the merits of plaintiff's sentencing calculation claim.

### B.   Illegal Detention

#### 1.   Legal Standards

##### (i)   Eighth Amendment

It has been held that the incarceration of an inmate beyond the expiration of his or her sentence violates the Eighth Amendment prohibition on cruel and unusual punishment. *McCants v. Jones*, No. 98-CV-6337. 1999 WL 804009, *2 (W.D.N.Y. Sept. 30, 1999) (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)).  Under the Eighth Amendment, in order to establish a constitutional violation, plaintiff must show that the deprivation is a sufficiently serious one. *Calhoun*, 999 F.2d at 654.  The prison must have had official had knowledge of the problem and of the risk that unwarranted punishment was being or would be inflicted. *Ford v. Conway,* No. 03-CV-927, 2009 WL 1924748, *6 (W.D.N.Y. July 1, 2009) (citing *McCants*, 1999 WL 804009 at *2).  Plaintiff must also establish that the official either failed to act, or took

only ineffectual action under circumstances indicating that he or she was deliberately indifferent to the inmate's problem. *Id.*  Finally, the inmate must demonstrate a causal connection between the official's response and the infliction of the unlawful detention. *Id.*

### (ii)    Due Process

A prisoner has a liberty interest in being released at the expiration of his maximum term of imprisonment. *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993).  Due process requires that the plaintiff have an opportunity to be heard "at a meaningful time and in a meaningful manner." *Calhoun*, 999 F.2d at 653 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) (internal quotations omitted).  When reviewing a due process claim, the court must distinguish between claims based on established state procedures and claims based upon random unauthorized acts by state employees. *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 165 (S.D.N.Y. 2007) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  A deprivation caused by a random and unauthorized act does not violate procedural due process so long as the government provides a meaningful post-deprivation remedy. *Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001)).

### 2.    Application

### (i)    Eighth Amendment

Attorney de Simone has submitted the exact calculations of the duration of plaintiff's sentences.  The calculation has been made more difficult, first because plaintiff violated his parole at least seven times during the period from 1991 until

2007; second, because there was an error in plaintiff's favor in the initial calculation of plaintiff's release date;[6] and third, because amended commitments issued by the judge in Kings County changed the way that plaintiff's 2000 sentence was calculated. (Dkt. No. 49-2 at 5-6).  The judge's amended commitments[7] necessitated a recalculation of plaintiff's sentence, but not to the extent proposed by plaintiff.

Plaintiff's 1991 concurrent sentences resulted in a maximum term of 4 years, with 11 months and 29 days of jail time credit. (Dkt. No. 49-2 at 6).  This meant that when plaintiff was received by DOCS, he would have 3 years and one day to serve on the maximum term. *Id.*  The first 1991 sentence was imposed in January, while the other sentence was imposed in May, and was the longer concurrent sentence of 4 years. *Id.*  The original error in plaintiff's favor was that the concurrent sentence of 2-4 years was calculated as beginning on the date that the original 1-3 year sentence was imposed, rather than as of the date that the May 1991 sentence was imposed. *Id.* at 5-6.

When a DOCS inmate receives a "concurrent" sentence, the sentence must commence on the date of its imposition. *Latham v. New York State Dep't of Correctional Services*, 296 A.D.2d 675, 675-76, 745 N.Y.S.2d 136, 138 (3d Dep't 2002) (citing *People ex rel. Weiss v. Reid*, 65 A.D.2d 560, 561, 408 N.Y.S.2d 966 (2d Dep't 1978)).  Thus, adding the 3 years and one day that plaintiff had left to serve

---

[6] Plaintiff continues to claim that his maximum expiration date as of February 3, 2000 was March 12, 2001.  Plaintiff is relying on the initial incorrect calculation that was later corrected to reflect a maximum expiration date of June 26, 2001. *Compare* Dkt. No. 49-2 at 5-6 *with* Dkt. No. 49-2 at 6-7).

[7] The judge in Kings County issued an amended commitment on April 4, 2005 and another on September 22, 2006. (Dkt. Nos. 49-13, 49-14; Defs. Exs. L, M).

13

after jail-time credit, plaintiff's new expiration date was May 1, 1994. (Dkt. No. 49-2 at 6).  Plaintiff was paroled on February 7, 1992, but was declared delinquent on June 9, 1992. *Id.* at 7.  The reason for the delinquency was the 1992 conviction, for which plaintiff was sentenced, as a second felony offender, to a term of 3½ to 7 years imprisonment. (Dkt. No. 49-2 at 2-3, 7; Dkt. No. 49-7, Defs.' Ex. F; 1992 Commitment).

Plaintiff was received by DOCS on January 7, 1993. (Dkt. No 49-2 at 7).  At that time, plaintiff still owed the 1 year, 10 months, and 22 days on his 1991 sentences.  Adding the new 3½ to 7 year sentence to the time that plaintiff had remaining on the 1991 sentences, the time owed to the new aggregate maximum term was 8 years, 10 months, and 22 days.[8] *Id.*  He was credited with 7 months and 3 days of jail time, leaving 8 years, 3 months, and 19 days to serve. *Id.*  Counting from the date that he was received, his "adjusted" maximum expiration date was April 25, 2001. *Id.*

On April 3, 1995, plaintiff failed to return after to Edgecombe Correctional Facility while participating in a work release program, but was returned to DOCS on April 18, 1995. (Dkt. No. 49-2 at 3, 7).  On the date that he failed to return to DOCS, plaintiff had 6 years and 22 days still owed to his maximum term, so when he was returned to DOCS on April 18, 1995, his maximum term was recalculated to start

---

[8] By operation of the New York Penal Law, additional sentences imposed for *inter alia*, second felony offenders, are required to run consecutively to the "undischarged indeterminate or determinate sentence of imprisonment imposed prior to the date on which the present crime was committed." N.Y. PENAL LAW § 70.25(2-a) (citing *inter alia* N.Y. PENAL LAW § 70.06).

running from April 18, 1995.[9] *Id.*  Thus, plaintiff's new maximum expiration date was May 5, 2001. *Id.*

Plaintiff served from April 18, 1995 until April 22, 1997, when he was paroled again. (Dkt. No. 49-2 at 3, 7).  He was declared delinquent on May 8, 1997. (Dkt. No. 49-2 at 7).  On the date that he was declared delinquent, he had 4 years and 2 months left to serve.[10] *Id.*  He was credited with 129 days of jail time in conjunction with this violation, leaving plaintiff with 3 years, 7 months, and 23 days owed to his maximum term. *Id.*  On October 10, 1997, he was restored to parole supervision, and his maximum expiration date was adjusted to June 3, 2001.[11] *Id.*

Plaintiff was again declared delinquent on January 4, 1999. *Id.*  He therefore had 2 years, 4 months, and 29 days owed on his maximum term. *Id.*  He was credited with 145 of parole jail time.  Thus, he now owed 2 years and 4 days to his maximum term. *Id.*  He was returned to DOCS as a parole violator on June 21, 1999, and his adjusted maximum expiration date was June 25, 2001.[12] *Id.*  Plaintiff was paroled again on September 16, 1999. (Dkt. No. 49-2 at 3).  However, on November 16, 1999, he was declared delinquent by the Division of Parole. *Id.* at 7.  Because he served from June 21, 1999 until he was paroled on September 16, 1999, and up until the time he was declared delinquent, he only owed 1 year, 7 months, and 9 days on his

---

[9] Clearly, plaintiff would not get credit on his sentence for the time that he had absconded from the facility.

[10] The time remaining was calculated by subtracting the time that he served from the 6 years and 22 days that he had remaining on his sentence.

[11] This new date was calculated by adding the 3 years, 7 months, and 23 days to October 10, 1997, the date that plaintiff was restored to parole supervision.

[12] This was calculated by adding 2 years and 4 days to June 21, 1999.

maximum term.  He was credited with 2 months and 16 days jail time credit, making the "net delinquent time owed" to the maximum term 1 year, 4 months, and 23 days. He was returned to DOCS as a parole violator on February 3, 2000, and his new maximum expiration date was calculated as June 26, 2001.[13] *Id.*

On April 28, 2000, plaintiff was sentenced in case no. 9130-99, by the Supreme Court, Kings County as a second felony offender to a term of 3 to 6 years for Grand Larceny, Second Degree. (Dkt. No. 49-2 at 7).  As stated above, under New York law, this new sentence would have to be imposed ***consecutively*** to the "***undischarged*** . . . sentence of imprisonment imposed prior to the date on which the present crime was committed." N.Y. PENAL LAW § 70.25(2-a) (emphasis added).  In this case, the "undischarged" portion of plaintiff's 1992 sentence was 1 year, 4 months, and 23 days, i.e. the time that plaintiff had remaining to serve on the sentence of 3 ½ to 7 year sentence, imposed in 1992, after all of his parole violations.

The judge in Kings County issued three commitments for plaintiff's 2000 sentence.  The original commitment was issued on April 28, 2000, the date of sentencing, and the commitment indicated that the sentence was to run "[c]oncurrently with sentence currently serving." (Dkt. No. 49-9; Defs.' Ex. H.  The sentence that plaintiff was "currently serving" was the time ***he had left*** on his 1992 sentence of 1 year, 4 months, and 23 days.  In order to run the 3 to 6 year sentence concurrently,[14]

---

[13] This date was determined by adding the 1 year, 4 months, and 23 days to the date that he was returned to DOCS as a parole violator.

[14] Attorney de Simone states that, although the Penal Law requires the sentences to run consecutively, DOCS must give effect to the commitment orders of the sentencing court. *See Murray v. Goord*, 1 N.Y.3d 29, 789 N.Y.S.2d 165 (2003).

the calculations began as if there were no outstanding sentence to serve, and DOCS calculated his maximum expiration date beginning the day the 2000 sentence was imposed, instead of making plaintiff serve the 1 year, 4 months, and 23 days before the 2000 sentence began to run. (Dkt. No. 49-2 at 8).

Because the 2000 sentence was determine to run concurrently, the calculations began as if there were no outstanding sentence to consider.  Based on the 2000 sentence, plaintiff's adjusted maximum expiration date was April 27, 2006. *Id.* Plaintiff appears to believe, however, that when the judge in Kings County made plaintiff's sentence "concurrent" to the sentence he was serving, that meant that the 3 to 6 year sentence imposed in 2000 would have begun to run in December of 1992 when he was sentenced to 3½ to 7 years for Grand Larceny.  If that were true, since the 7-year maximum term from 1992 was longer than the 6-year maximum term from the 2000 sentence, plaintiff would "max out" from ***both sentences*** at the same time that he believed he would "max out" from the 1992 sentence, on March 12, 2001.

Plaintiff appears to confuse the meaning and interpretation of "concurrent" sentence.  Under the New York Penal Law, when two sentences run "concurrently," "the time served under imprisonment on any of the sentences shall be credited against the ***minimum periods*** of all the concurrent indeterminate sentences . . . ." N.Y. PENAL LAW § 70.30(1)(a).  However, the "maximum terms of the indeterminate sentences and the term or terms of the indeterminate sentences . . . shall merge in and be satisfied by the discharge of the term which has the longest ***unexpired*** time to run." *Id.* Because plaintiff had already served most of his 1992 sentence by the time he was sentenced to 3 to 6 years in 2000, the 6 year maximum term of the 2000 sentence

became the basis of his new maximum expiration date.[15]

It is clear that the fact that the 2000 sentence was made "concurrent" did have a beneficial effect on the calculation of plaintiff's minimum sentence and his eligibility for parole, because although he was sentenced to 3 to 6 years imprisonment on April 28, 2000, he was released to parole on July 5, 2000.[16] (Dkt. No. 49-2 at 3). When he was released to parole in July 2000, he still had more than 5 years left on his 6 year maximum term. *Id.* at 9.  This time plaintiff was declared delinquent the next day, July 6, 2000, with 5 years, 9 months, and 21 days to serve on his maximum term. *Id.*  He was returned to DOCS as a parole violator on July 28, 2000 and credited with 22 days of jail time, leaving 5 years, 8 months, and 29 days to serve. *Id.* at 10.  His new maximum expiration date was calculated as April 27, 2006. *Id.*

Plaintiff was paroled again on October 19, 2000, but was again declared delinquent on November 15, 2000. *Id.* at 4, 10.  He was returned to DOCS as a parole violator on January 3, 2001 and was credited with 1 month and 19 days of jail time. *Id.* Plaintiff thus had 5 years, 3 months, and 23 days owed to the 2000 sentence. *Id.*  His adjusted maximum expiration date was April 26, 2006. *Id.*

---

[15] Each time that the judge in Kings County amended the commitment, plaintiff's terms were recalculated.  The court notes that according to Attorney de Simone, after DOCS received the amended commitment dated April 4, 2005, plaintiff's sentence was erroneously re-calculated as running consecutively to the 1991 and 1992 sentences pursuant to N.Y. PENAL LAW § 70.25(2-a). However, when DOCS received the second amended commitment, it properly recalculated plaintiff's time.  Attorney de Simone has submitted all the calculations made by DOCS in plaintiff's case.  This court is relying upon the last calculation, which appears to be the correct one. (Dkt. No. 49-2 at 9-10).

[16] One of the problems with plaintiff's logic is that defendants are responsible for his excess incarceration.  He was paroled three months after he was sentenced to 3 to 6 years incarceration.  He was responsible for his subsequent incarceration.  He was paroled again, three months after he was returned as a parole violator and violated parole two months later.  He was paroled again in March of 2001, only two months after he was returned to DOCS as a parole violator.

Plaintiff was paroled again two months later on March 19, 2001, but was declared delinquent on April 12, 2001, still with over five years left on the 2000 sentence. *Id.* at 8.  On May 9, 2002, plaintiff received the consecutive 1½ to 3 year sentence. *Id.* at 4.  Because plaintiff had 5 years and 14 days left on the 2000 sentence, the three year consecutive term was added to those five years, making the time plaintiff owed to the aggregate term 8 years and 14 days. *Id.* at 8.  Plaintiff was received by DOCS on May 29, 2002, with 9 months and 2 days of jail time credit. *Id.* Thus, the plaintiff owed 7 years, 3 months, and 12 days to the maximum term.  His adjusted maximum expiration date was now August 10, 2009. *Id.*

After plaintiff applied for relief in Kings County in 2006, the judge issued a second commitment order, running the 2000 sentence "***concurrently with all outstanding sentences***." (Dkt. No. 49-13; Defs.' Ex. L).  The effect of this amended order was to require DOCS to recalculate the plaintiff's release date, running the 2000 sentence concurrent with the 1991, 1992 and ***2002*** sentences.  This calculation is reflected in Attorney de Simone's submission at 9-10.  Because the unexpired term of the 2000 sentence was longer than the maximum term of the 2002 sentence, DOCS did not consider the 3 year maximum term in its calculations. *Id.* at 10.  Thus, when plaintiff was declared delinquent on April 12, 2001 and later returned to DOCS on May 29, 2002, DOCS only added the outstanding 5 year and 14 day term from the 2000 sentence, rather than adding the three year maximum term that had been imposed by his 2002 conviction.  Thus, plaintiff's new maximum expiration date, calculated after the Kings County commitment order of September 22, 2006, was June 13, 2007. (Dkt. No. 49-2 at 9-10).

DOCS then calculated plaintiff's possible good time based on one third of the 5 year and 14 days owed to the maximum term. *Id.*  This calculation resulted in 1 year, 8 months, and five days subtracted from the plaintiff's maximum expiration date, giving plaintiff an earliest conditional release date of October 10, 2005.  Because plaintiff had already passed that date when his sentence was recalculated in October of 2006, DOCS held a Time Allowance Committee (TAC) hearing to determine whether plaintiff would be awarded all of the possible good time. (Dkt. No. 49-2 at 10; Dkt. No. 49-15, Defs.' Ex. N, TAC Decision).  Although the TAC granted plaintiff the full amount of his good time, he committed two Tier III disciplinary infractions, which suspended the previously granted good time. (Dkt. No. 49-2 at 10).

Plaintiff was released again in December 2006, with a maximum expiration date of June 13, 2007. *Id.* at 11.  Plaintiff was declared delinquent as of April 5, 2007, 2 months and 8 days from his maximum expiration date. *Id.*  A parole violation warrant was lodged by the Division of Parole on May 13, 2007, while plaintiff was incarcerated at the New York City Department of Corrections, and a final revocation hearing held by the Division of Parole on July 9, 2007. *Id.* at 5, 11.  Plaintiff's new maximum expiration date was calculated by adding the 2 month and 8 day delinquent time to May 13, 2007, the date of the Parole Violation warrant.  Plaintiff's new maximum expiration date was July 21, 2007, and he was discharged by the Division of Parole on that date. *Id.*

Plaintiff has submitted the transcripts of his 2000 sentencing and the transcripts of his *2006* hearings in Kings County on plaintiff's motion to vacate his 2000 sentence pursuant to N.Y. CRIM. PROC. LAW § 440.20. (Dkt. No. 47 at 25-68).  Plaintiff has also

submitted written correspondence that he had with Justice Dowling's law clerk in Kings County regarding this issue.  A review of all of the submissions indicates that there have been some errors in plaintiff's sentencing calculations, but upon correction, these errors did not result in plaintiff being incarcerated beyond the appropriate time.

As stated above, New York law specifically provides that, in the case of a second felony offender, the new sentence must run consecutively to the time remaining on parole when plaintiff is sentenced on the new charge.  Because Justice Dowling's first commitment order stated that the sentences were to run concurrently, DOCS calculated the 2000 sentence as running concurrently to the time ***owed to parole*** on the 1992 sentence.  At the time of plaintiff's sentencing in 2000, plaintiff owed only slightly more than one year on the previous sentence.  Thus, the 2000 sentence was made to run concurrently to that time.  Although plaintiff complains that this is incorrect, and DOCS should have calculated the sentence to run concurrently as of 1992, a review of Justice Dowlings statements at sentencing and during the plaintiff's motion to vacate in 2006 do not support plaintiff's allegations.

Although the conversation between the judge and plaintiff during the sentencing on the 2000 conviction was unclear, the first commitment states that the sentence was to run concurrently to the sentence plaintiff was currently serving, while the second commitment states that the judge "recommends that this sentence runs concurrently with time owed to parole, nunc pro tunc to 4/28/00, the date of sentence." (Dkt. No. 49-13 at 2; Defs.' Ex. L).  This commitment follows a letter written by Justice Dowling's law clerk to plaintiff, dated April 5, 2005, stating that "it is the understanding of this court that statutorily a sentence must run consecutive to time

owed to parole with the exception of the fact that th Judge in its [sic] discretion may *recommend* that the sentence run concurrently to the undischarged portion of the prior sentence." (Dkt. No. 47 at 18).  It appears that the intent of the judge at that time was to run the new sentence concurrently to the slightly more than one year left on the 1992 sentence, not to start the 2000 sentence running in 1992.  DOCS recalculated accordingly.

During the hearings on the plaintiff's section 440.20 motion, it was clear that there was some confusion over the calculation of plaintiff's 2000 sentence.  Plaintiff also does not account for the fact that he violated parole many times, creating even more confusion with his sentence calculation.  A review of the transcript of the 2006 hearing shows that even plaintiff stated that "I was sentenced to a time running concurrent with ***the time owed to Parole from the 1992 sentence*** . . . ." (Dkt. No. 47 at 29) (emphasis added).  A sentence concurrent to the time owed on a prior sentence does not mean concurrent to the entire sentence.

When plaintiff was sentenced on the 2002 conviction, DOCS calculated the new sentence as running consecutively to the time owed to parole as statutorily required.  However, when Justice Dowling issued her third commitment, she specified that the 2000 sentence was to run concurrently to all outstanding sentences. (Dkt. No. 49-14 at 2; Defs. Ex. M).  At that time plaintiff owed time to the 2002 sentence, thus DOCS recalculated his maximum expiration date without considering the 2002 sentence.

Thus, this court finds that, notwithstanding the confusion and the slight errors in computation, due in part to inconsistency between the New York State statute and the judge's orders, plaintiff's ultimate time calculation was correct.  Thus, he was not

detained for three years past his proper release date.  Although officials were aware that plaintiff believed that his calculations were incorrect, the DOCS officials were not deliberately indifferent to plaintiff's situation.  Even if there had been a miscalculation, and assuming that the deprivation was sufficiently serious,[17]

> it is clear that not every prison official who fails to resolve a sentence miscalculation is liable for violating the constitutional rights of the affected inmate.  "A court may find the deliberate indifference in cases where prison officials were put on notice of a prisoner's dispute and then refused to investigate the claim of miscalculation, or where the investigation was so inept and ineffectual that it demonstrates deliberate indifference."

*McCants v. Jones*, 1999 WL 804009 at *3.  In this case, however, it is clear that plaintiff's dates were recalculated every time each time that the judge issued a new commitment order on the 2000 sentence, in an attempt to abide by the Court's order, notwithstanding the Penal Law's direction to the contrary.

Prison officials were not deliberately indifferent to plaintiff's arguments or his sentence calculation.  Prompt communication and investigation into the plaintiff's claims refutes plaintiff's claims that defendants were deliberately indifferent. *Walker v. Donelli*, No. 9:08-CV-406, 2009 WL 973445, *4 (N.D.N.Y. Nov. 12, 2008) (Report-Recommendation), *adopted*, 2009 WL 973445, *1 (N.D.N.Y. April 9, 2009).  Plaintiff himself has submitted many documents showing that the prison officials were

---

[17] Based on plaintiff's argument, he claims that he spent more than one thousand days beyond his release date.  If true, that would certainly be a sufficiently serious deprivation. *Cf. Calhoun*, 999 F.2d at 654 (a five-day extension of the plaintiff's release date did not inflict harm of a sufficiently serious magnitude to rise to the level of an Eighth Amendment violation). *See also Brims v. Burdi*, No. 03 Civ. 3159, 2004 WL 1403281, *2 (S.D.N.Y. June 23, 2004) (six days not sufficient) (citing *inter alia Haygood v. Younger*, 769 F.2d 1350, 1355-57 (9th Cir. 1985) (plaintiff properly stated a sufficient injury when he alleged that his incarceration continued for five years past his release date)).

23

responsive to his sentencing concerns.  Thus, defendants are entitled to summary

judgment on plaintiff's Eighth Amendment claims relating to his sentence

calculation.[18]

### (ii)    Due Process

To the extent that plaintiff's complaint may be read to raise a procedural due

process violation, plaintiff does not allege any procedural errors, other than the

miscalculation itself.  In *Schultz v. Egan*, 103 Fed. Appx. 437, 441 (2d Cir. 2004),

plaintiff challenged the lack of a hearing afforded to him on the issue of his sentence

calculation and claimed that prison officials did not provide adequate process for

addressing inmate complaints about the calculation of their sentences.  The Second

Circuit interpreted this as a challenge to established County procedures. *Id.*

In this case, however,  plaintiff is challenging an alleged "random, unauthorized

act" by a state employee.  This is not a challenge to established state procedure,

because state procedure would have required plaintiff's sentence to run consecutively

to the outstanding time. *Cf. Sudler v. City of New York*, No. 08 Civ. 11389, 2010 WL

68095, *10 (S.D.N.Y. Jan. 8, 2010) (judge recommended denial of a motion to dismiss

for failure to state a claim where defendants did not dispute that they acted in

accordance with state policy in running the plaintiff's sentences consecutively and

---

[18] The court notes that the amended complaint indicates that all the defendants are named in their official capacities.  It is abundantly clear that the Eleventh Amendment prevents 1983 actions for damages against state defendants in their official capacities. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.  An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991)(citations omitted).  The court has considered the issues in this case as if plaintiff had properly named defendants in their "individual capacities."

argued that the penal law required the actions they took) (Report Recommendation),
*adopted*, 2010 WL 726964 (S.D.N.Y. Feb. 19, 2010).  In this case, the defendants
maintain that they did run plaintiff's sentences concurrently.  Basically, plaintiff
claims that the defendants' definition of "concurrent" was flawed, resulting in an
incorrect calculation that defendants refused to correct.  The issue becomes whether
New York has an adequate post-deprivation remedy.

In *Schultz*, the court held that if plaintiff were alleging that defendants acted in a
random and unauthorized manner, "the availability of an Article 78 proceeding or a
habeas proceeding would almost certainly suffice to satisfy the due process clause."
*Id.* at 441.  In this case, plaintiff's amended complaint states that he did file "a state
writ of habeas corpus" to correct the alleged error. (AC at ¶ 28).  The Oneida County
Supreme Court Justice's decision is included in plaintiff's reply papers. (Dkt. No. 52,
Pl.'s Reply at 25-27, Pl.'s Ex. M - Decision Denying State Habeas Corpus Relief).
There is no indication that plaintiff appealed this denial.[19]  The court also notes that
plaintiff's reply contains several memoranda from correctional officials, explaining
the computation to plaintiff.  One memorandum from an official at Mohawk
Correctional Facility told plaintiff that "[y]our legal dates have been reviewed several
times.  If you still disagree with them you can petition the Office of Sentence Review,

---

[19] Plaintiff's amended complaint states that he filed his state habeas "[i]n July," but that he did
not have the state decision . . . ." (AC ¶ 28).  It appears that plaintiff claims that he did not have the
decision because he "made his way to S.H.U. a few times."  *Id.*  It is unclear whether plaintiff is
claiming that the decision was lost or whether he simply did not have his property because he was in
S.H.U.  However, he did have the decision, or subsequently obtained the decision, because he
submitted it as an exhibit to his reply papers in this case.  Oneida County Supreme Court Justice
Anthony F. Shaheen found that "there is no showing that Petitioner is being illegally detained, and as
such he is not entitled to the extraordinary relief of a Writ of Habeas Corpus." (Dkt. No. 52 at 26).

NYS Department of Correctional Services . . . ." (Dkt. No. 52 at 47-48; Pl.'s Exs. U, V) (*See also* Dkt. No. 52 at 18, 23-24).

As stated by the Second Circuit in *Schultz*, when the plaintiff is challenging a random and unauthorized act, the availability of an Article 78 proceeding or a habeas corpus proceeding "would almost certainly suffice to satisfy the due process clause." 103 Fed. Appx. at 441.  Thus, to the extent plaintiff's complaint in this case can be read to raise a procedural due process violation, separate from his Eighth Amendment claim, it may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for summary judgment (Dkt. No. 47) be **DENIED**, and it is

**RECOMMENDED**, that defendants' cross-motion for summary judgment (Dkt. No. 49) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 8, 2010

Hon. Andrew T. Baxter
U.S. Magistrate Judge